**Opinion filed July 11, 2024**



# In The

# Eleventh Court of Appeals

_____

## No. 11-24-00014-CV

_____

## IN THE INTEREST OF K.R., A CHILD

---

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 10973-CX**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and father of K.R.  *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2023).  The father filed a notice of appeal.[1]  On appeal, the father presents two issues in which he challenges the sufficiency of the evidence, offered by the Texas Department of Family and Protective Services (the Department), to support the trial

---

[1]Because only the father has appealed the trial court's order of termination, we limit the scope of this opinion to only those facts related to the trial court's findings as to the father.

court's findings under subsections (E) and (O). We affirm in part, and we reverse and remand in part.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. FAM. §§ 161.001(b), 161.206(a), (a-1) (West 2022). To terminate one's parental rights under Section 161.001, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V) and that termination is in the best interest of the child. *Id.* § 161.001(b). In this case, the trial court found that the father had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (E) and (O). The trial court also found that termination of the father's parental rights would be in the best interest of the child. *See id.* § 161.001(b)(2).

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the factfinder is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the

child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Procedural and Factual Background*

Jessica Edwards, the Department investigator, testified that K.R. was removed at birth because he and the mother both tested positive for methamphetamine. The mother also tested positive for marihuana. K.R. was born on February 10, 2023. Edwards also testified that the mother indicated the father was responsible for getting her into methamphetamine use.

Kristian Castro, the 2INgage permanency case manager, testified that the father was required to submit to a drug test, but that the test was never completed. Castro also testified that the father did not complete all the requirements of his service plan.

It appears from the record that the father was arrested and convicted for possession of methamphetamine. The initial offense occurred on August 28, 2022, almost six months before the birth of K.R., and the sentence was imposed on September 28, 2023. Castro indicated that she thought the father was in the Taylor County Jail because of a DWI charge, but the judgment of conviction indicates that he was sentenced for the possession of methamphetamine.

At the conclusion of the hearing, the Department informed the trial court that it intended to ask for termination of the father's parental rights based on subsections (E) and (O). The trial court requested further explanation as to subsection (E). The Department indicated only that the father was the one to introduce the mother to methamphetamine. The trial court terminated the parental rights of the father based on subsections (E) and (O) and found termination to be in the best interest of the child.

In two issues on appeal, the father challenges the findings made under subsections (E) and (O). The father does not challenge the best interest determination made by the trial court.

*Analysis*

*Endangering Conduct*

In the father's first issue, he challenges the findings made by the trial court under Section 161.001(b)(1)(E).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct need not be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). With respect to the sufficiency of the evidence to support a finding under subsection (E), "endangering conduct is not limited to actions directed towards the child." *Id.* (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The endangering conduct may include the

parent's actions before the child's birth and may relate to the parent's actions while the parent had custody of other children. *Id.*; *In re S.T.*, No. 11-19-00363-CV, 2020 WL 2610393, at *3–4 (Tex. App.—Eastland May 18, 2020, pet. denied) (mem. op.) (upholding finding under subsection (E) based upon parent's conduct with other children).

Sufficient evidentiary support for a finding under subsection (E) would ordinarily be enough to uphold the termination of the parental rights of the father. *See In re N.G.*, 577 S.W.3d 230, (Tex. 2019) ("To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground."). However, we conclude that the evidence presented at trial by the Department is insufficient to support termination of the father's parental rights under subsection (E).

If the Department has clear and convincing evidence that a parent has committed one of the acts listed in Section 161.001(b) and that termination of that parent's rights is in the best interest of the child, then it must diligently offer such evidence to the trial court and the evidence supporting both must be present in the record on appeal. The only evidence the Department relies on to support the termination of the father's parental rights under subsection (E) was that the father was responsible for introducing the mother to methamphetamine use and that his incarceration at the time of the final hearing was for possession of methamphetamine. In this regard, the record indicates that the father committed the offense of possession of methamphetamine more than five months before K.R. was born. Edwards, the Department investigator, testified that the following exchange occurred when the mother was confronted with the intake results at the hospital:

> [EDWARDS]: I asked [the mother] if she was aware why [the drugs] would be there. She did say yes. At first, she said that she did

use methamphetamine a few weeks ago, then later on, she did admit to using a couple of days prior to having her child.

[THE DEPARTMENT]: When you were discussing with the mother her methamphetamine use, who did she say got her into the methamphetamine use?

[EDWARDS]: [Appellant].

The Department presented no testimony that related to *when* the father "got [the mother] into the methamphetamine use." There was no testimony from the mother or the father or other evidence verifying that statement, and there was no evidence that the father knew the mother was pregnant or that she was using drugs during her pregnancy. *See Interest of A.G.*, No. 11-19-00178-CV, 2019 WL 5617640, at *2 (Tex. App.—Eastland Oct. 24, 2019, pet. denied) (mem. op.) (where the child was born after the appellant's incarceration and there was no evidence that the father knew about the child or the mother's drug use, the evidence was insufficient to uphold a finding under subsection (E)). But the record includes mention of the mother's drug use as early as 2002. There was no evidence presented by the Department of any drug use by the father when he was in K.R.'s presence. Further, the only criminal conviction proven was the possession of methamphetamine, which occurred more than five months before K.R. was born. *See id.* With only a single conviction occurring prior to the child's birth and no evidence the father knew of, or encouraged, the mother's drug use during pregnancy, we conclude that the evidence is insufficient to support the trial court's finding under subsection (E), which requires a conscious course of conduct.[2] *See* FAM.

---

[2]The Department points to multiple cases for the proposition that a parent's conduct need not be directed at the child to constitute endangerment yet may still showcase a pattern of conduct which would be ill-disposed to child-rearing. Among those cases listed are: *J.O.A.*, 283 S.W.3d at 345–46; *C.H.*, 89 S.W.3d at 28; *Boyd*, 727 S.W.2d at 533; *In re A.M.*, 495 S.W.3d 573, 579 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *In re N.K.*, 399 S.W.3d 322, 330 (Tex. App.—Amarillo 2013, no pet.); and *In re M.R.*,

§ 161.001(b)(1)(E); *D.O.*, 338 S.W.3d at 34; *D.T.*, 34 S.W.3d at 634. Thus, the evidence presented does not satisfy the clear and convincing standard of proof required to prove that the father engaged in conduct or knowingly placed the child with someone that engaged in conduct, which endangered the child's physical or emotional well-being. We hold that the evidence is not legally sufficient to uphold the trial court's finding under subsection (E). We sustain the father's first issue.

*Failure to Comply with Court Order*

In the father's second issue, he challenges the findings made by the trial court under Section 161.001(b)(1)(O). Pursuant to subsection (O), the Department has the burden to prove by clear and convincing evidence that Appellant failed to comply with the requirements and provisions of a court ordered plan which specifically set out the necessary actions that the parent must complete in order for the child to be returned to the parent. *See* FAM. § 161.001(b)(1)(O). Subsection (O) additionally requires that the child must have been in the temporary or permanent managing conservatorship of the Department for no less than nine months, and that the child was removed for abuse or neglect under Chapter 262. *Id.* A trial court may not order termination under subsection (O) based on the parent's failure to comply with a specific provision of a court order if the parent proves by a preponderance of the evidence that (1) the parent was unable to comply and (2) the parent made a good

---

243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.). However, these cases are distinguishable from the instant case as they involved appellants who either knew their child had been removed and continued to participate in illicit activities, or they conducted such activities within the home. Many also included extensive criminal records. Moreover, while we certainly consider a parent's imprisonment on the issue of endangerment, a parent's imprisonment alone does not constitute sufficient evidence to support a finding under subsection (E) under the clear and convincing evidence standard. *See Boyd*, 727 S.W.2d at 534; *see also Interest of J.F.-G.*, 627 S.W.3d 304, 312–13 (Tex. 2021) (citing *Boyd*, 727 S.W.2d at 533–34). Here, the evidence of the father's criminal conduct prior to the birth of K.R.—and with no evidence that he knew of the mother's pregnancy—is distinguishable from those cases relied upon by the Department and is insufficient to support a finding under subsection (E) in this case.

faith effort to comply and failure to comply is not attributable to the fault of the parent. *See id.* at § 161.001(d).

The Department presented the following three witnesses at the final hearing: (1) Edwards, the Department investigator, who testified that she had no contact with the father and testified that the mother was unable to provide to her any contact information for the father; (2) M.M., K.R.'s foster mother, who provided no relevant testimony with regard to K.R.'s father; and (3) Castro, the 2INgage permanency case manager, who provided all of the testimony related to the father's compliance or noncompliance with the service plan that was incorporated into the trial court's status hearing order.

At the time of the final hearing, the father was in jail but anticipated being released in sixty days. At the outset of the final hearing, his attorney asked that the hearing be continued so that the father might have time to complete required services. The father was present for the final hearing, but he did not testify. The mother did not appear at the hearing, nor did she testify.

Castro testified that she had had little contact with the father. Castro testified that the only phone number she had for the father was disconnected and that she never obtained an updated number. The testimony at the final hearing largely focused upon the mother; there is no evidence as to when or if the father ever lived with the mother, particularly during her pregnancy with K.R and, as we have said, there is insufficient evidence of conscious conduct by the father for a finding under subsection (E). Castro testified that she first met with the father in March 2023 and shortly thereafter the father was incarcerated. The father's status hearing was reset from April 6 to April 28, but he was incarcerated before this status hearing could occur.

The only request that Castro made to the father was for the father to submit to a drug screen. Castro sent this request in a message on Facebook messenger because

his phone was not working, but there was no response. Castro spoke to the father after the status hearing in November 2023 while he was confined in the Taylor County Jail. At that time Castro did not request that the father submit to a drug screen. Castro admitted that the father sent her letters, but he received nothing in response from her. Castro additionally could not recall if she gave the father her card with her contact information when she talked to him in March 2023. Since November 2023, Castro had no more contact with the father—no phone call was set up, no visits were made to him, and no letters were sent to him. When he was transferred to the Taylor County Jail based on a bench warrant, Castro did not visit him, and she had no communication with the father in the thirty days prior to the termination hearing.

Importantly, there is no clear evidence that the father received a final copy of the service plan. In this regard, Castro testified that she met with the father in March 2023,[3] prior to his incarceration, and that they "discussed what kind of services would be on the plan. And a copy was given to him at that [March] meeting." The father did not yet have an attorney. The evidence shows that the father was not involved in the preparation of the service plan "agreement," that the plan was not signed by a 2INgage worker until April 2023, that the father did not sign the plan, and that it was not made or incorporated into a trial court's order until the May 8, 2023 status hearing. Thus, the service plan provided to the father in March—what written draft of the plan, if any, was given to the father by Castro is unknown—was not proven, but in the chronology given by Castro, it could not have been the final plan ordered by the trial court. The evidence confirms that no efforts were made by the Department to facilitate any visitation between K.R. and the father. The Department did not know whether the father maintained a legal source of income

---

[3]According to her testimony, this meeting occurred "sometime between" the February adversary hearing and the April status hearing.

during the pendency of the case.  The Department knew that the father had housing. Castro testified that the father complied with a visit from the Department. The father allowed Castro to visit his home and although she made suggestions for things to repair, she did not testify that the home was unsafe.  Castro testified that there were no reports of any abuse or domestic violence in the father's home.

While Castro testified that the father did not inform the Department of residency changes, participation in counseling, or his attending psychological evaluations, there was no evidence presented that the father was given a written copy of the final, court-ordered final service plan that required him to do so, nor was there any explanation of why the father did not engage in services other than he was in incarcerated and the Department did not know of his whereabouts.  The father never refused a psychological evaluation; he never refused to submit to a drug assessment; he was never ordered to have visitation with K.R.; and, he was never referred for individual counseling by the Department.  Castro admitted that she did not refer the father to any services or providers from which he could get these services completed and she testified that the father "was never ordered any visits with [K.R.]"  Castro also admitted that the father could not have completed the drug assessment without the referral, and that the father signed all releases requested of him.  The father did complete the parenting packet while he was confined in the Taylor County jail. While there, he sent letters to Castro but she testified that she did not receive them until November 2023.  Castro could not recall the last time that she had contact with the father.  Yet, she asked the trial court to terminate the father's parental rights because K.R.  did not have a bond with the father.

"Terminating the parent-child relationship for the parent's failure to comply with a court-ordered service plan necessarily requires a nuanced assessment of the parent's conduct and progress toward plan completion in light of the totality of the plan's requirements and overall goal."  *In re R.J.G.*, 681 S.W.3d 370, 381 (Tex.

2023). "Subsection (O) contemplates direct, specifically required actions." *In re A.L.R.*, 646 S.W.3d 833, 837 (Tex. 2022). "We eschew vague plan requirements and have emphasized that the court's order describing the parent's necessary actions 'must be sufficiently specific to warrant termination of parental rights for failure to comply with it.'" *R.J.G.*, 681 S.W.3d at 378 (quoting *N.G.*, 577 S.W.3d at 238).

"[T]ermination is not automatic or required, even if the Department properly proves a parent failed to comply with a specific plan provision." *Id.* at 379 (citing FAM. § 161.001(b)(1)(O) ("The court *may* order termination of the parent-child relationship if the court finds by clear and convincing evidence . . . that the parent has . . . failed to comply." (emphasis added))). "[T]he trial court bears the ultimate responsibility for determining whether that finding supports termination." *Id.* Therefore, it is only the violation of "material" requirements of a plan that justify termination under subsection (O). *Id.* (citing *In re J.F.C.*, 96 S.W.3d 256, 278–79 (Tex. 2002) (affirming termination under subsection (O) based on parents' failure to comply with "material provisions of the trial court's orders"); *In re T.L.B.*, No. 01-21-00081-CV, 2021 WL 3501545, at *6 (Tex. App.—Houston [1st Dist.] Aug. 10, 2021, pet. denied) (mem. op.) (affirming termination under subsection (O) based on mother's failure to comply with "the material requirements of the plan"); *In re A.P.*, No. 13-19-00342-CV, 2019 WL 6315429, at *7 (Tex. App.—Corpus Christi–Edinburg Nov. 26, 2019, no pet.) (mem. op.) (affirming termination under subsection (O) based on mother's failure to comply with "material provisions of the service plan"); *In re A.D.*, 203 S.W.3d 407, 411–12 (Tex. App.—El Paso 2006, no pet.) (affirming termination under subsection (O) based on mother's failure to comply with "material requirements" of her plan)). "[I]f the noncompliance is trivial or immaterial in light of the plan's requirements overall, termination under (O) is not appropriate." *R.J.G.*, 681 S.W.3d at 379.

On appeal, the father argues that he was not given a reasonable opportunity to comply with the service plan due to the inaction on the part of the Department in making all the necessary referrals for services. We conclude that at least two of the father's failed compliance complaints are indeed a result of inaction by the Department to make the required referrals: individual counseling and a psychological evaluation. Additionally, the Department never attempted to schedule visitations, and thus the noncompliance with regular visitations cannot be solely attributed to a failure on the father's part. The father did allow the Department to visit his home and he completed a parenting class while he was incarcerated. There was no evidence presented about the father's source of income, and the Department complained that the father failed to notify them of any change of address. The latter, however, appears to have been due to a miscommunication rather than a lack of effort on the part of the father as he did send letters to Castro, she just did not receive them for several months. The record reflects that the father became incarcerated sometime after April 6 but before April 28, 2023.

Thus, the crux of the father's remaining alleged noncompliance centers around a failure by the father to submit to a drug screening test prior to his incarceration. Castro testified that this failure delayed the referral for a drug assessment as required by the service plan. But the Department admittedly did not refer the father to any services or providers from which he could get these services completed. The Department prepared the service plan on March 23, 2023, and the service plan was signed by Castro and a supervisor on April 5, 2023. The father's signature does not appear on this document. Although incarceration is not a legal excuse or defense to a parent's failure to comply with a service plan order, we cannot say here that his failure to comply is solely the result of the father's inaction. *See In re L.L.N-P.*, No. 04-18-00380-CV, 2018 WL 6069853, at *3 (Tex. App.—San Antonio Nov. 21, 2018, pet. denied) (mem. op.). There is no admission by the father

that he was using illegal drugs during the pendency of the removal of K.R., or that he continued to do so after K.R. was born. Although there is evidence in support of termination under subsection (O), we cannot say that the evidence offered by the Department establishes by clear and convincing evidence that the father refused to participate in the court ordered service plan to the extent that those failures, under these circumstances, should result in the termination of his parental rights. Accordingly, we sustain the father's second issue in part to the extent that he challenges the factual sufficiency of the evidence supporting termination under subsection (O).

*This Court's Ruling*

We reverse the trial court's termination order insofar as it terminated the parental rights of K.R.'s father, and we affirm the order of the trial court in all other respects. We remand this cause to the trial court for further proceedings consistent with this opinion with respect to K.R.'s father. Any proceeding on remand must be commenced within 180 days of this court's mandate. TEX. R. APP. P. 28.4(c).

W. BRUCE WILLIAMS
JUSTICE

July 11, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.